**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AHMAD MASALHA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:25-cv-08698** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ADVOCATE HEALTH AND HOSPITALS** | ) | |
| **CORPORATION d/b/a ADVOCATE** | ) | |
| **HEALTHCARE,** | ) | **Jury Trial Demanded** |
| | ) | |
| **Defendant.** | | |

## COMPLAINT

Plaintiff, Ahmad Masalha ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Advocate Health and Hospitals Corporation d/b/a Advocate Healthcare ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, ("ADA") seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, Defendant's disability-based harassment, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit further arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), seeking redress for Defendant's race-based discrimination, race-based harassment, national origin-based harassment, Defendant's discrimination on the basis of Plaintiff's national origin, as well as Defendant subjecting Plaintiff to religion based-

discrimination, religion-based harassment, and Defendant's retaliation against Plaintiff for engaging in protected activity under Title VII.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.  This action is authorized and instituted pursuant to 42 U.S.C. § 12101 *et seq* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 *et seq*.

4.      Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5.      All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*, and § 706 of Title VII, *42 U.S.C. §2000e-5*, have occurred or been complied with.

6.      A charge of employment discrimination was filed by the Plaintiff with the Equal Employment Opportunity Commission ("EEOC") (Attached hereto as Exhibit "A").

7.      Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B"), and Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8.      At all times material to the allegations of this Complaint, Plaintiff, Ahmad Masalha, resides in Cook County in the State of Illinois.

9.      At all times material to the allegations in this Complaint, Defendant, Advocate Health and Hospitals Corporation d/b/a Advocate Healthcare, is a corporation doing business in

and for DuPage County whose address is 2025 Windsor Dr. Oak Brook, IL 60523.

10.    Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4) and 42 U.S.C §2000e(f).

11.    During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA and Title VII, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A) and Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

12.    Plaintiff was hired by Defendant as a Preliminary General Surgery Resident from on or around June 25, 2024 until he was unlawfully terminated on or about February 19, 2025.

13.    As a Preliminary General Surgery Resident, Plaintiff's essential job duties included, but were not limited to:

- Evaluating and planning treatment for patients;
- Providing preoperative and postoperative care;
- Managing patient care issues, including diagnoses, operative procedures, and outpatient follow-up;
- Participating in rounds and clinics;
- Educating patients and their families;
- Assisting in the operating room;
- Performing surgical procedures under supervision;
- Progressing to taking on more operative responsibilities as they gain experience;
- Documenting operative procedures and learning from them;
- Participating in teaching surgical clerkships;
- Tutoring and mentoring junior residents and medical students;
- Developing and using good teaching skills;
- Attending conferences and meetings;
- Developing interprofessional communication skills;
- Managing surgical consult requests; and
- Contributing to scholarly activity, such as research and literature review.

14.    Plaintiff suffers from anxiety, panic attacks, depression, and Bell's palsy, medical disability conditions which are physical and mental impairments that substantially limit one or

more of Plaintiff's major life activities.

15.     Plaintiff's disabilities substantially limit major life activities including, but not limited to:

- Cognitive functions;
- Sleeping;
- Eating;
- Drinking;
- Ability to care for oneself;
- Breathing;
- Difficulty with swallowing, chewing, and drooling; and
- Speech.

16.     Plaintiff is "qualified individual" as defined under the ADA.

17.     Regardless of Plaintiff's disabilities, he was qualified to perform the essential functions of his job with or without reasonable accommodations

18.     Plaintiff was qualified for his position and was known to develop, meet, and exceed performance standards for Plaintiff's job title.

19.     Plaintiff received satisfactory feedback from Defendant about his work performance.

20.     Since at least June 25, 2024 through February 19, 2025, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within Plaintiff's protected class and has been subjected to a hostile work environment on the basis of race, national origin, and religion, violating Title VII and Section 1981.

21.     Plaintiff is Middle Eastern and is a member of a protected class because of his race whom Defendant subjected to different terms and conditions of employment than others not within

Plaintiff's protected class.

22.     Plaintiff is Palestinian and is a member of a protected class because of his national origin.

23.     Plaintiff is a practitioner of the religion of Islam, is a devout Muslim, and is a member of a protected class because of his religion.

24.     From the start of his time working for Defendant, Plaintiff informed Defendant that he was Muslim, including by informing the program coordinators, Katie Esparza and Lindsey Abdullah, and his senior residents.

25.     Plaintiff adheres and observes all religious codices and established practices of Islam.

26.     On or about June 29, 2024, Physician Assistant, Jessica Jager, sent Plaintiff a vague and unwarranted request on Plaintiff's scheduled day off while he was not working.

27.     On or about July 1, 2024, Jager shouted at Plaintiff in an operating room in front of Plaintiff's colleagues for not responding to her June 29, 2024 work message on Plaintiff's day off, berating Plaintiff for not working on his scheduled day off.

28.     Jager later escalated the issue to Plaintiff's supervisor, Dr. Lewis B. Schwartz.

29.     Dr. Schwartz called Plaintiff into his office.

30.     Dr. Schwartz immediately began aggressively interrogating Plaintiff with inappropriate questions targeted at his national origin, accosting Plaintiff with, "What ethnicity are you?"

31.     Plaintiff responded that he was Palestinian.

32.     Dr. Schwartz retorted in disgust, "People from your country and background of

5

Middle Eastern descent are known and have a stereotype to mistreat women in all aspects and overall not treat women well," directly targeting Plaintiff's national origin and race.

33.     Dr. Schwartz continued his disparaging verbal assault on Plaintiff by yelling at and berating Plaintiff for not working on Plaintiff's day off.

34.     Plaintiff, shocked and devastated by the discriminatory disparagement of his national origin and race, left Dr. Schwartz's office feeling an exacerbation of his disability conditions.

35.     On or about July 21, 2024, Plaintiff took a pre-scheduled and pre-approved day off to attend to a disability-related doctor's appointment, which the senior vascular surgery resident, Dr. Ahmad Asha, approved, thereby engaging in protected activity.

36.     On or about July 23, 2024, Plaintiff experienced a severe flare-up of his disability conditions.

37.     Plaintiff informed Dr. Asha via text message that he was feeling unwell and would need a day off to recover, thereby engaging in protected activity.

38.     Dr. Asha acknowledged and approved Plaintiff's absence.

39.     On or about July 26, 2024, upon Plaintiff's return to duty, Plaintiff was informed by Dr. Asha that Plaintiff was banned from participating in the operating room and surgical cases, which was a decision involving and supported by Dr. Schwartz.

40.     Plaintiff was deeply disturbed, utterly shocked, and highly offended by the immediate race-based, national origin-based, and disability-based discrimination and retaliation he experienced after he took approved time off to treat his disability conditions and after Dr. Schwartz discovered Plaintiff's Middle Eastern and Palestinian identities.

6

41.     On or about July 27, 2024, Plaintiff formally reported this discriminatory and retaliatory treatment during a Zoom meeting with Defendant's Human Resources (HR) representative Heinen Peg, thereby engaging in protected activity.

42.     Plaintiff was told that the matter would be investigated and that follow-up meetings would occur.

43.     On or about July 29, 2024, Plaintiff followed up with HR about his report of discrimination and retaliation.

44.     Plaintiff never received a response.

45.     Defendant fully ignored and failed to engage Plaintiff's report of discrimination, harassment, and retaliation, thereby allowing and enabling a hostile environment of discrimination to continue against Plaintiff.

46.     On or about July 30, 2024, in further retaliation and discrimination against Plaintiff, Plaintiff was abruptly and prematurely removed from his rotation at Advocate Lutheran General Hospital and reassigned to Christ Medical Hospital five days before the rotation was set to begin—an unusual transition inconsistent with standard residency scheduling, of which Plaintiff was provided no notice.

47.     Upon information and belief, other similarly-situated employees of Defendant outside of Plaintiff's protected class were removed from their rotations and reassigned before their respective rotations were set to begin.

48.     In or around September 2024, Plaintiff requested a letter of recommendation from Dr. Bethany Slater, Defendant's program director.

49.     During a scheduled phone call with Dr. Slater, she reproached Plaintiff with,

"Why should I write you a letter of recommendation? We haven't heard positive things about you," citing Dr. Schwartz's beratement of Plaintiff and unjust reprimand of Plaintiff for not working on Plaintiff's day off.

50.     She then challenged Plaintiff by conditioning a potential letter of recommendation with, "If you want a letter of recommendation, send me three of your H&P notes that weren't copied, as reported by your colleague. Then, I'll think about it."

51.     Dr. Slater's condition that Plaintiff provide extra documentation before she would think about writing him a letter of recommendation imposed burdens to Plaintiff's receipt of a letter of recommendation that were highly unusual and inconsistent with requests for letters of recommendation from a program director.

52.     Upon information and belief, Dr. Slater did not impose conditions on letters of recommendation for other similarly-situated employees of Defendant outside of Plaintiff's protected class.

53.     Dr. Slater's condition that Plaintiff provide extra documentation before she would think about writing him a letter of recommendation served as an effective refusal to write Plaintiff a letter of recommendation, which was a highly unusual and inconsistent outcome of requests for letters of recommendation from a program director.

54.     Upon information and belief, Dr. Slater did not refuse to write a letter of recommendation for other similarly-situated employees of Defendant outside of Plaintiff's protected class.

55.     Dr. Slater's challenge to Plaintiff incorrectly implied that Plaintiff copied his H&P notes, which was not an accurate representation of Plaintiff's work and raised the concern with Plaintiff that his work product was being discriminatorily evaluated in retaliation for his

engagement in protected activity and his identities as a disabled Middle Eastern Muslim.

56.     Plaintiff left the meeting with Dr. Slater highly concerned by her implication of false accusations against his work product, discouraged by her unusual and inconsistent condition on his request for a letter of recommendation and effective refusal to write him a letter of recommendation, and afraid that his future as a resident was in jeopardy as a result of the race-based, national origin-based, and disability-based discrimination, harassment, and retaliation he suffered at the hands of Defendant.

57.     Immediately following his meeting with Dr. Slater, Plaintiff received an email from HR Representative Heinen Peg informing Plaintiff that the investigation into his claims of discrimination, harassment, and retaliation was closed, with no findings of fault.

58.     Plaintiff viewed the timing of HR's conclusion of his report of discrimination, harassment, and retaliation highly suspicious, especially as coupled with Dr. Slater's unusual and inconsistent response to his request for a recommendation letter following his request for reasonable accommodations of days off to tend to his disability conditions and Dr. Schwartz's attack on Plaintiff for his national origin, race, and disabilities.

59.     On or about October 22, 2024, about 3 months after Plaintiff's work with Dr. Schwartz ended, Dr. Schwartz submitted a defamatory and falsified review on Plaintiff's Medhub profile, asserting wholly untrue and discriminatory allegations against Plaintiff, including, "He was disruptive, arrogant, and difficult to work with. He generated significant conflict with the other members of the team. His rotation on the service was prematurely terminated. I do not recommend his continuation in the surgical training program."

60.     Plaintiff was not disruptive, arrogant, or difficult to work with while on rotation with Dr. Schwartz.

61.     Plaintiff did not generate any conflict with other members of the team while on rotation with Dr. Schwartz.

62.     Plaintiff was not terminated from his rotation with Dr. Schwartz – he was abruptly reassigned, a decision that was wholly out of his control and not due to any issues with Plaintiff's work product.

63.     Dr. Schwartz's statement that he does not recommend Plaintiff for continuation in the surgical training program was a direct attack on Plaintiff's employment with Defendant, and was based on Dr. Schwartz's plain and unadulterated discriminatory animus against Plaintiff.

64.     In or around late October 2024, all residents were required to receive a flu vaccination.

65.     Shortly after receiving his flu vaccination at Christ Medical Hospital, Plaintiff developed health complications from the vaccination and was subsequently diagnosed with Bell's Palsy as a result of the flu vaccination.

66.     Despite Plaintiff's condition, Plaintiff was never offered or granted any accommodations or support, and was expected to continue work as per usual.

67.     During this same period, Plaintiff began experiencing flare-ups of his disability conditions, including heightened and severe panic attacks, anxiety, and depression.

68.     On or about January 27, 2025, Plaintiff notified his team, including his chief resident, Dr. Dawlat Mohammed, and including his senior residents, Dr. Jen Lei and Dr. Sydney Pekarek, that he needed to take an emergency day off due to a family crisis, which was approved.

69.     The next day, on or about January 28, 2025, Plaintiff returned to work after taking an approved day off.

10

70.    Dr. Mohammed hostilely snarked at Plaintiff, "Oh wow, thank you for deciding to show up today," demeaning and embarrassing Plaintiff in the presence of other residents, medical students, and his colleagues for taking an approved day off.

71.    Dr. Mohammed's hostile and discriminatory aggression against Plaintiff triggered a severe panic attack.

72.    Plaintiff excused himself to de-escalate his severe panic attack and manage his disability conditions after experiencing a flare-up at work following Dr. Mohammed's hostile and discriminatory aggression against him, thereby engaging in protected activity by requesting reasonable accommodation to briefly step away to treat his disability flare-up.

73.    That same day, Plaintiff emailed HR Representative Heinen Peg to report the incident and the worsening toll the hostile work environment was taking on his mental and emotional well-being, which was causing disability flare-ups, thereby engaging in protected activity.

74.    Defendant failed to engage Plaintiff's report, thereby allowing and enabling a hostile environment of discrimination to continue against Plaintiff.

75.    On or about February 3, 2025, Plaintiff actively participated in morning preparations with the surgical team.

76.    Plaintiff's surgical team knew Plaintiff was Muslim.

77.    From the start of his time working for Defendant, Plaintiff informed his senior residents, including Dr. Vernon Obiakor, Dr. Mohammed, Dr. Pekarek, and Dr. Jen Lei, who have control over Plaintiff's schedule, that he required a few minutes to step away and pray in accordance with his established and protected religious practice as a Muslim of praying at

11

specified times five times per day.

78.    Plaintiff's established and protected religious practice of praying five times per day was not an undue burden on Defendant.

79.    Plaintiff stepped away briefly for just a few minutes to complete his morning prayer—an established and protected religious practice.

80.    When Plaintiff returned, Plaintiff found that his team had intentionally started rounds without him and failed to inform him of any responsibilities.

81.    Plaintiff made multiple efforts to reintegrate, including by messaging and approaching several team members—including Dr. Mohammed, Dr. Pekarek, and Dr. Lei—but was repeatedly dismissed and ignored with a refusal to assist Plaintiff in reintegrating after Plaintiff briefly stepped away to complete his religious practice.

82.    The discriminatory hostility, isolation, and refusal to assist Plaintiff that he suffered in retaliation for engaging in a religious practice led Plaintiff to experience a flare-up of his disabilities in the form of a panic attack so severe that he needed to step away briefly to manage his disability condition, which he informed Defendant, thereby engaging in protected activity by requesting reasonable accommodation.

83.    Before Plaintiff did so and in the midst of his severe panic attack, Plaintiff still responsibly transferred the service phone and ensured no patients were left unattended in order to ensure that patient care was not compromised and that his job duties were fulfilled.

84.    Plaintiff informed the team of his intention to contact HR and stressed his desire to improve communication and make meaningful contributions.

85.    Despite Plaintiff's appropriate handling of the situation, Plaintiff later learned this

incident was cited as professional misconduct, which Plaintiff reasonably interpreted to be discrimination, retaliation, and harassment against him due to his disability conditions and Muslim identity.

86.     On or about February 3, 2025, Plaintiff reported to HR Representative Heinen Peg the retaliation, harassment, discrimination, and emotional distress Plaintiff had endured since at least July 2024, thereby engaging in protected activity.

87.     On or about February 4, 2025, Plaintiff received an email from Dr. Slater informing Plaintiff that he was placed on involuntary unpaid leave pending the outcome of an internal investigation into his reported concerns.

88.     Plaintiff was informed the matter would be resolved by on or about February 6, 2025.

89.     Defendant failed to notify Plaintiff of any findings by February 6, 2025.

90.     In fact, Defendant failed to notify Plaintiff of any findings by February 18, 2025

91.     On or about February 18, 2025, Plaintiff followed up again with HR Representative Heinen Peg and with Dr. Slater, expressing his ongoing concern and requesting an update, thereby engaging in protected activity.

92.     On or about February 19, 2025, Plaintiff was informed that he was being terminated for leaving work on or about January 28, 2025 and on or about February 3, 2025, due to panic attacks.

93.     The stated reason for Plaintiff's termination displayed Defendant's refusal to accommodate Plaintiff's reasonable request for accommodation as he suffered flare-ups of his disability conditions.

94.     Plaintiff was informed that the investigation was still ongoing, although the decision of his termination was final and not subject to appeal.

95.     Plaintiff later discovered that Dr. Pekarek (white, non-Muslim, non-Middle Eastern), had been granted four weeks of fully paid leave for mental health concerns during this same period.

96.     Plaintiff was denied comparable support or accommodation despite being diagnosed with Bell's Palsy shortly before these events and openly disclosing ongoing mental disabilities inflamed by workplace hostility, discrimination, retaliation, and a failure to accommodate.

97.     Following Plaintiff's termination, he requested a copy of his personnel file.

98.     Plaintiff discovered defamatory evaluations by residents that revealed that Dr. Pekarek had been actively defaming Plaintiff to Dr. Slater.

99.     Dr. Pekarek baselessly and falsely claimed that Plaintiff "copy forwarded all of my patient notes," which confirmed Plaintiff's suspicion of discriminatory evaluation of his work product that arose when Plaintiff requested a letter of recommendation from Dr. Slater.

100.     Dr. Pekarek further baselessly and falsely alleged that Plaintiff "lie[s] to attendings and senior residents alike."

101.     These serious accusations are entirely false and were never investigated by Dr. Slater.

102.     Even a brief inquiry would have showed their falsity, but instead, Dr. Slater accepted Dr. Pekarek's discriminatory and defamatory claims as fact.

103.     She then denied Plaintiff a letter of recommendation based on these

14

unsubstantiated allegations.

104.    Throughout Plaintiff's time in the program, Plaintiff witnessed and experienced a pattern of discriminatory treatment targeting minority residents, including himself and others such as Dr. Sami Shabeeb (Syrian, Middle Eastern, Muslim), Dr. Omar Alarishid (Iraqi, Middle Eastern, Muslim), and Dr. Ali Muhammed (Pakistani, Muslim).

105.    Minority residents were consistently assigned disproportionately difficult workloads and often grouped together on understaffed teams, while white non-Muslim residents were regularly scheduled on well-supported services with adequate resources.

106.    Both Dr. Ali and Plaintiff had previously filed complaints with the ACGME regarding racial discrimination and the unequal treatment they received compared to white colleagues, particularly involving Dr. Pekarek.

107.    Ultimately, on or about February 19, 2025, Plaintiff was unlawfully terminated on the basis of Plaintiff's disabilities, religion (Islam), national origin (Palestinian), race (Middle Eastern), and for engaging in protected activity as described above.

108.    The purported justification for termination was unlawful discrimination based on disability, religion, national origin, and race.

109.    Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

110.    Plaintiff was retaliated against, and his employment was ultimately terminated for opposing unlawful discrimination and for exercising his protected rights.

111.    Plaintiff met or exceeded Defendant's performance expectations during the entire duration of his employment, as evidenced by the lack of non-discriminatory write-ups and/or disciplinary actions and/or negative performance reviews.

15

112.    Plaintiff reported the race-based, disability-based, national origin-based, and religion-based discrimination and/or harassment to Defendant.

113.    Plaintiff was targeted for termination because of his race, national origin, religion, and disability.

114.    Plaintiff suffered multiple adverse employment actions including, but not limited, to being terminated.

115.    There is a basis for employer liability for the race-based, national origin-based, disability-based, and religion-based harassment that Plaintiff was subjected to.

116.    Plaintiff can show that they engaged in statutorily protected activity – a necessary component of their retaliation claim – because Plaintiff lodged complaints directly to their manager about the harassment.

## COUNT I
### Violations of the Americans with Disabilities Act
### (Disability-Based Discrimination)

117.    Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

118.    By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

119.    Plaintiff met or exceeded performance expectations.

120.    Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

121.    Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

122.    Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

16

123.     Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

124.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

125.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT II**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

126.     Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

127.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

128.     Plaintiff is a qualified individual with a disability.

129.     Defendant was aware of the disability and the need for accommodations.

130.     Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

131.     Plaintiff's reasonable accommodations that was requested was not an undue burden on the Defendant.

132.     Defendant did not accommodate Plaintiff's disability.

133.     Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., due to Plaintiff's disability.

134.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

17

135.     As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT III**
**Violation of Americans with Disabilities Act**
**(Disability-Based Harassment)**

136.     Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

137.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

138.     Defendant knew or should have known of the harassment.

139.     The disability-based harassment was severe or pervasive.

140.     The disability-based harassment was offensive subjectively and objectively.

141.     Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, due to Plaintiff's disability.

142.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

143.     As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT IV**
**Violation of Americans with Disabilities Act**
**(Retaliation)**

144.     Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

18

145.     Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq.*

146.     During Plaintiff's employment with Defendant, Plaintiff requested and utilized approved accommodations, and reporting disability-based harassment.

147.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

148.     In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of disability based harassment or discrimination.

149.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory or harassing conduct complained of by Plaintiff.

150.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting and utilizing accommodations, and reporting disability-based harassment, thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

151.     Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

152.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

153.     As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT V**
**Violation of 42 U.S.C. § 1981**
**(Race-Based Discrimination)**

19

154.     Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

155.     Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

156.     Defendant's conduct against Plaintiff's race (Middle Eastern) amounts to a pattern or practice of systemic race discrimination that constitutes illegal intentional race discrimination in violation of 42 U.S.C. Section 1981.

157.     Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

158.     Defendant's unlawful conduct resulted in considerable harm and adverse employment actions to Plaintiff and is entitled to all legal and equitable remedies under Section 1981.

159.     As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT VI**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Race-Based Discrimination)**

160.     Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

161.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of the Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, *et seq*.

162.    Plaintiff met or exceeded performance expectations.

163.    Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's race, Middle Eastern.

164.    Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

165.    Defendant terminated Plaintiff's employment on the basis of Plaintiff's race.

166.    Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

167.    As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

<u>**COUNT VII**</u>
**Violation of Title VII of The Civil Rights Act of 1964**
**(Race-Based Harassment)**

168.    Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

169.    By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to race-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

170.    Defendant knew or should have known of the harassment.

171.    The race-based harassment was severe or pervasive.

172.    The race-based harassment was offensive subjectively and objectively.

173.    The race-based harassment was unwelcomed.

174.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of

21

1964, as amended, 42 U.S.C. § 2000e, *et seq.*, due to Plaintiff's race, Middle Eastern.

175.    Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

176.    As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT VIII**
**Violation of Title VII of The Civil Rights Act of 1964**
**(Retaliation)**

177.    Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

178.    Plaintiff is a member of a protected class under 42 U.S.C. § 2000e, *et seq.*

179.    During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted race discrimination or race-based harassment.

180.    As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

181.    In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of race discrimination or harassment.

182.    Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

183.    Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

184.    By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the race-based discrimination or harassment, thereby violating Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

185.   Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

186.   As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

**COUNT X**
**Violation of the Title VII of the Civil Rights Act of 1964**
**(National Origin-Based Discrimination**

187.   Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

188.   By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's national origin, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

189.   Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's national origin, Palestinian.

190.   Plaintiff met or exceeded performance expectations.

191.   Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

192.   Defendant terminated Plaintiff's employment on the basis of Plaintiff's national origin.

193.   Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

194.   As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of

enjoyment of life

## COUNT IX
### Violation of Title VII of the Civil Rights Act
### (National Origin-Based Harassment)

195.    Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

196.    By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to national origin harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

197.    Defendant knew or should have known of the harassment.

198.    The national origin harassment was severe or pervasive.

199.    The national origin harassment was offensive subjectively and objectively.

200.    The national origin harassment was unwelcomed.

201.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, due to Plaintiff's national origin, Palestinian.

202.    Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

203.    As a direct and proximate result of the national origin harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT XI
### Violation of Title VII of the Civil Rights Act
### (Retaliation)

204.    Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

205.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

24

206. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about national origin harassment or national origin-based discrimination.

207. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

208. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of national origin harassment or national origin-based discrimination.

209. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

210. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

211. By virtue of the foregoing, Defendant retaliated against Plaintiff based on reporting the national origin harassment or national origin-based discrimination, thereby violating the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

212. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

213. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

### COUNT XII
### Violations of Title VII of the Civil Rights Act of 1964
### (Religion-Based Discrimination)

214. Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

25

215.    "Title VII prohibits employers from 'discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race*, color, *religion*, sex, or national origin." *Sklyarsky v. Harvard Maint., Inc.,* 2014 U.S. Dist. LEXIS 96187, at *12 (N.D. Ill. 2014) *citing* 42 U.S.C. §2000e-2(a)(1) (emphasis added).

216.    To state a Title VII religious discrimination claim, a plaintiff must allege that (1) their bona fide religious observances or practice conflicts with an employment requirement; (2) they called the observance or practice to their employer's attention; and (3) the religious observance or practice was the basis for an adverse employment decision. *Mahran v. Cnty. Of Cook,* 2023 U.S. Dist. LEXIS 206308, at *5-6 (N.D. Ill. 2023) *citing Adeyeye v. Heartland Sweeteners, LLC*, 721 F. 3d 444, 449 (7th Cir. 2013).

217.    Plaintiff engages a bona fide religious practice of praying five times per day.

218.    Defendant discriminated against Plaintiff by terminating Plaintiff's employment shortly after Plaintiff disclosed his identity as a Muslim, disclosed his religious practice of praying five times per day, and requested a religion-based accommodation of stepping away for a few minutes to attend to his prayers.

219.    Plaintiff suffered an adverse employment action in the form of termination as a result of Defendant's discrimination.

220.    Based on the foregoing, Defendant willfully discriminated against Plaintiff based on his religion in violation of Title VII.

221.    As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

<u>**COUNT XIII**</u>
**Violations of Title VII of the Civil Rights Act of 1964**
**(Failure to Accommodate Religious Belief or Practice)**

222.    Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

223.     Title VII requires an employer to reasonably accommodate an employee's religious beliefs or practices, unless doing so would cause an undue burden on the employer.

224.     Plaintiff holds a sincere religious belief (praying five timers per day) and requested accommodation to practice his religion.

225.     Defendant was aware of the religious practice and the need for accommodations.

226.     Defendant failed to engage in an interactive process to determine the appropriate accommodations after Plaintiff requested a reasonable accommodation.

227.     The religion-based accommodation that Plaintiff requested was objectively reasonable and did not place an undue burden on Defendant.

228.     Instead of taking steps to accommodate Plaintiff's request to pray five times per day, Defendant terminated Plaintiff on the basis of his religion and religious practices.

229.     Accordingly, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's sincerely held religious beliefs or practices in violation of Title VII.

230.     As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

## COUNT XIII
### Violations of Title VII of the Civil Rights Act of 1964
### (Religion-Based Harassment)

231.     Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

232.     4By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff because of religion in violation of Title VII.

233.     Defendant knew or should have known of the religion-based harassment.

234.     The religion-based harassment was severe or pervasive.

235.     The religion-based harassment was offensive subjectively and objectively.

236.    Plaintiff is a member of a protected class under Title VII, due to Plaintiff's religious beliefs or practices.

237.    Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

238.    As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT XIV
### Violations of Title VII of the Civil Rights Act of 1964
### (Retaliation)

239.    Plaintiff repeats and re-alleges paragraphs 1-116 as if fully stated herein.

240.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

241.    During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about religion-based harassment or religion-based discrimination.

242.    As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

243.    In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of religion-based harassment or religion-based discrimination.

244.    Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

245.    Plaintiff suffered an adverse employment action in retaliation for engaging in

protected activity.

246.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on reporting religion-based harassment or religion-based discrimination, thereby violating the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

247.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

248.     As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a.     Back pay with interest;

b.     Payment of interest on all back pay recoverable;

c.     Front pay;

d.     Loss of benefits;

e.     Compensatory and punitive damages;

f.     Reasonable attorneys' fees and costs;

g.     Award pre-judgment interest if applicable; and

h.     Award Plaintiff any and all other such relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 25th day of July 2025.

/s/ Yasmeen Elagha, Esq.
Yasmeen Elagha, Esq.
Mohammed Badwan, Esq. (Lead)
**SULAIMAN LAW GROUP, LTD.**
2500 South Highland Ave., Suite 200
Lombard, IL 60148
yelagha@sulaimanlaw.com
mbadwan@sulaimanlaw.com
*Counsel for Plaintiff*